Mr. Lawrence. Yes, Your Honor. May it please the Court, my name is Amos Lawrence, and I represent the petitioner Donna Wejetunga, a citizen of Sri Lanka who has appealed the BIA's denial of her application for withholding of removal. The immigration judge in this case, whose decision was adopted by the BIA, denied my client's claim to relief on the grounds that she failed to establish that her brother's threat to kill her upon her return to Sri Lanka had a statutory nexus. Since review of this particular issue involves the application of established legal principles to undisputed facts, it is subject to no review. In principle reliance on two BIA judges I thought that there was a concern expressed by both the BIA and the IJ that there were shifting theories of entitlement here, and we've got a concern with regard to whether or not she exhausted her administrative remedies with regard to the theories of the claims that she actually pursued before the immigration judge. Could you address that, please? Sure. The BIA didn't address that. They merely affirmed the opinion that she was ineligible based on any sort of exception to the one-year filing guideline for political asylum. But didn't the IJ expressly rule that religious persecution was not the basis of her claim before the IJ? You're saying did the IJ rule that? The IJ made that determination. But the IJ addressed the question of whether there was a pattern of practice of persecution against persons of similar – Let me just refine Judge Tallman's question. Thank you. Didn't the lawyer, when asked by the IJ, make it clear that religion was not the basis of her claim of persecution? Two things. One is that was the petitioner's response to cross-examination. Is your case based on religion? And I would submit that the petitioner is not equipped to make a legal determination as to what her claim was based on. What did – Then the plaintiff's – petitioner's counsel then emphasized that he believes that her – But the counsel didn't correct that. No. The counsel said that it was based on being a Christian woman who's being persecuted for doing this behavior. Well, they focused on the group basis. Basis of Christian women. Right. Who merely – I'm asserting that – Goes off with a – Yeah. My position is the BIA has de novo review to review legal challenges. And we're not precluded to raise that before the BIA, even if counsel conceded that. Secondarily, if you base a claim – Well, the IJ may have looked at the case differently if he would have – if he had understood that religion was the basis for her claim. That's correct. But the BIA is in the unique position to consider legal claims based on undisputed facts, just as this Court is. So our position is, one, is we're not precluded from arguing a different theory. Secondarily, we're submitting that maintaining that your claim is based on religion versus membership in a subgroup of that religion is a difference without a significant distinction. Well, I mean, what's the exhaustion doctrine all about, then? And doesn't it require that the administrative agency understand the theory of the Petitioner's claim for relief so that it can address that theory based upon the factual record? I agree with that entirely, but we did raise that before the BIA. And the BIA is entitled to consider other theories. If you have an oral argument at the end of a case and say you're precluded from arguing anything else before the BIA, that's not what any of the regulations hold or require. It's different than that, isn't it? In other words, we have to be satisfied that the Petitioner has, in essence, given the agency fair notice of what it is that the Petitioner is alleging so that the agency can meet that request head on and rule on it. Otherwise, we're left in a petition for review. It's not quite the same as affirming the district court on any grounds supported by the record. It's a different type of review on the decision of an administrative agency. I agree with that entirely, Your Honor, except for the fact that the BIA, as I've said, is in a position to consider that and to invite different legal arguments. We've made that legal argument. They declined to rule on it. So the mere fact that we're reviewing the IJ's decision because the BIA neglected to elaborate on this theory should not preclude us from maintaining that we preserve that issue for Biel by erasing it to the BIA. We're not asking the BIA to make a different factual argument. That might be a hard argument. I'll just let it go at that. But let me ask you this. What is the group? Let's pick up the case from the basis that the IJ decided the case. Well, the IJ decided the case on the fact that it's not a – there wasn't a pattern of practice against this group. We're maintaining that there's an alternative variety of social group, which is a disfavored class, which doesn't require pattern of practice. What evidence in the record supports that statement you just made? What evidence is used? Well, the – Here it's not that – this is like a – as I recall, it was a perceived. Exactly. Imputed. Imputed, right. But what is the class that she belongs to? She's a member of a class of Christian women that failed to abide by cultural and religious norms. Okay. Now, what is the evidence in the record that shows that that's a disfavored class, other than her testimony about her family situation? So the department – If you look in the country reports, do the country reports talk about honor killings? No. All right. Is there any other evidence that would help, you know, establish the existence of this class? I believe there is. The – among them are at page 181 of the record, where the State Department acknowledged the questions relating to family law are adjudicated in accordance with customary laws of ethnic and religious groups, leading to discrimination and the application of different legal standards for women in Sri Lanka. I'm asserting that, generally speaking, women are a disfavored class in Sri Lanka, and my client is a member of a subgroup of Christian women who failed to abide by those so-called ethnic and religious laws. But what do I look at to see that women who engage in sexual relations outside of marriage, that it's likely that they're going to be subjected to honor killings? Well, there's a – typically in the pattern – let me address that in a little bit of a circular fashion. Typically in the pattern of practice type of claim, the petitioner or the alien has experienced no harm and no threat, and she's saying my mere inclusion in this group is going to put me at harm. It's a slightly different – it's a slightly different situation. I understand it. I understand the theory perfectly well, pattern and practice. Right. But what is the evidence in the record that – The evidence which under the disfavored group analysis is that my client has an individualized fear based on her brother's unequivocal threats to kill her. And under the disfavored class analysis, there's two prongs. Is she a member of a disfavored class? Our position is she is. And two, is there an individualized threat of persecution? And there is no dispute that there's an individualized threat. Therefore, that reduces the requirement to show a widespread pattern of practice of this. In fact, it eliminates the pattern and practice requirement. Would you like to take time for rebuttal? I'll save a minute. Thank you, Your Honor. Okay. Good morning, Your Honor's counsel. My name is Margaret K. Taylor. I represent the government in this matter. Before I launch into the argument, I need to clarify the way immigration law works, because it appears that Petitioner has melded two terms of art and two lines of analysis that don't quite work. There is one term of art that's called disfavored group, and there is another term of art called particular social group. Particular social group is the term of art that applies to the on-account-of analysis for withholding a removal. It applies to what? The on-account-of analysis. One of the protected grounds. One of the protected grounds. Correct, Your Honor. Being a member of a particular group. Right. The disfavored group analysis. But you could be a member of a group that's disfavored. Well, but the disfavored group analysis really has no application to this case, because the disfavored group of analysis applies to the risk-of-harm prong of the withholding analysis. In other words, when an immigration judge analyzes statutory eligibility for withholding, he first looks at credibility. Then he looks at risk-of-harm. And then he looks whether that risk-of-harm would be on account of a cognizable ground. The disfavored group analysis goes to the second prong, the risk-of-harm. And there was no denial of withholding based on risk-of-harm. So all the analysis about pattern and practice and individualized risk-of-harm really have nothing to do with this case, because this case was denied because there was no nexus. So of the two group analyses, only the particular social group analysis pertains to this case. Excuse me. So all the pattern and practice and individualized analysis that petitioners have to look at is whether or not she is a member of a particularized group. You still have to ask whether or not she's likely, in this case of withholding, whether it's more likely than not that she would suffer persecution if she were to return to her country. Yes, but the decision was made not on the basis of whether she was likely to be harmed. I understand that, but my only concern, you're right. There has to be a group, a particularized group here, and that's what my questions were designed to ask. What is the group? Yes, and, Your Honor, you're absolutely right. This group, first of all, to go back to the disfavored group analysis, that was never raised at all in front of the immigration judge or in front of the board. It's nowhere in the board brief. It makes its first appearance in the opening brief before this Court, and that is strongly argued in the reply brief. So there's no exhaustion and no jurisdiction over that analysis anyway. In terms of how the groups are defined, before the immigration judge, the group was defined as Christian women who have been accused of running away and becoming pregnant by Muslim men. And before this Court, the group is defined as women who refuse to conform to gender-specific laws and social norms. And there is no evidence in the record that such a group exists. That's what my questions were. That's what I was going to ask. Maybe frame my question, reframe my question, but that's what my question was about. Where is the evidence that supports that? There is absolutely no evidence in the record that such a group exists, and there is very little, if any, evidence that Ms. Vegetunga belongs to such a group, if it exists. And so what we're left is with an analysis that doesn't work and with no evidence to support it. May I just clarify one thing with you? Yes, of course, Your Honor. The government's position. You know, the IJ complained about credibility. Right. Never specifically said, I find her not credible. Right. And I gather from the government's brief, the government isn't going down that path of saying she's not credible. He made an explicit credibility finding. The government's focus is, just as you put it here today, that she hasn't satisfied, even accepting that her testimony is credible. She just hasn't satisfied that she is a member of a particularized group. And even if she did, there's no evidence to support. That's correct, Your Honor. I mean, because of this Court's jurisprudence on credibility. Right. We chose to argue the burden part of this case rather than the credibility part of the case. Okay. I just wanted to clarify. That was my sense from reading the briefs. Yes, Your Honor. Okay. Now, if the Court is going to at all entertain the religion on account of that Ms. But second of all, if the Court finds jurisdiction, there is no evidence in the record that the harm that she fears is on account of her religion. I went through the record very carefully looking for any references to her Christian beliefs. And I could only find three references to religion that the witness made altogether and none to Christianity. Two of them were in the written application at AR-216, where she makes statements like her family, she had a strict religious atmosphere in her family. And then the other one is at AR-129. And that is, by the way, she was not being cross-examined when she said that it wasn't on account of religion. But the immigration judge listened to her story and then said, well, now, is this on account of your politics? Is this on account of what is it on account of? And he went through the five. And then when he got to religion, he said, no, it's not on account of religion either. Your Honors, any other questions for me? I have none. All right. Thank you very much. We urge the Court either to dismiss for lack of jurisdiction or to deny. If for some reason the Court decides to entertain the disfavored group analysis, then we ask that you hold this in abeyance because it is based on Lo Long, which the government has petitioned to have en banc rehearing, and that's still pending. Thank you very much. Thank you. Thank you, Your Honors. Just three very brief points. We dispute the government's contention that disfavored group is distinctly different than social group. It's a type of social group. To say we've raised the issue that she's a member of a social group but not a disfavored group, we believe is incorrect. Secondarily, the contention of the group could be a disfavored group as well. That's what I'm maintaining. And secondarily, although there's not direct evidence that women who engage in premarital affairs and get pregnant are a member of a disfavored group, the State Department report established unequivocally that women generally who are members of ethnic and religious groups are a disfavored group subject to discrimination and different legal standards. So the group is all women from Sri Lanka, all Sri Lankan women? Well, I'm saying my group is. What you just said is all women in Sri Lanka are members of a particularized group for the unaccounted prom. I'm saying all women who are a member of specific ethnic and religious groups, that may in fact be all women. And finally, religious grounds, we've relied on that on INRAE-SA, where a woman was persecuted based on her failure to dress appropriately. This was her expression of religious opinion, so it was not required that somebody actually articulate religious opinion to be persecuted on that account. They can engage in behavior that's considered at odds with those religious tenets, and that's what my client was perceived to have done. Thank you, Your Honor. Thank you very much. Your time is up. The matter will be submitted. Thank you.
judges: Paez, Tallman, Karlton